Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROY THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HAWAII COUNTY | )   Civil Action No. _____ |
| | )   VERIFIED COMPLAINT |
| Defendant | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

## <u>VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

COME NOW the Plaintiff, ROY THOMPSON, by and through his undersigned counsel, and complains of the Defendant as follows:

## <u>I</u>

## <u>PARTIES</u>

**Plaintiff**

1.  Plaintiff Roy Thompson (Thompson) is a natural person, an adult male resident of the State of Hawaii and resides in Hawaii County and is a citizen of the United States. But for the actions challenged in this lawsuit, he would have a Permit To Acquire, hereinafter "PTA";

## **Defendant**

2.  Defendant Hawaii County ("County") is a municipal corporation incorporated under the laws of the State of Hawaii. County is authorized by law to control and maintain the Hawaii Police Department, an agency of the County, who acts on County's behalf in the area of law enforcement. County is therefore ultimately responsible for Hawaii Police Department ("HPD"), and their actions, and therefore, must assume the risks incidental to the maintenance of HPD, their employees, laws, customs and policies. County can be served by serving the Department of the Corporation Counsel, Hawaii County at 101 Aupuni Street, # 325, Hilo, Hawaii 96720;

## II

## <u>JURISDICTION AND VENUE</u>

3.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988;

4.  Venue lies in this Court pursuant to 28 U.S.C. § 1391;

## III

## <u>INTRODUCTION</u>

5.  This action challenges the constitutionality of County's Hawaii Police Department Rules regarding the granting or denial of PTA permits that make it extremely difficult, if not outright impossible or impermissibly time consuming, for Plaintiff and others to obtain PTA and therefore to exercise their right to be armed, as guaranteed by the Second Amendment's text "bear arms," and as recognized and reaffirmed by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022);

6.  The main policies, actions, and customs that Plaintiff targets and alleges are unconstitutional here are

A- The use of discretion in the issuance of PTA;

B- The denial of PTA based upon answering "YES' to question 18 on the uniform statewide PTA application (See Exhibit 1);

C- The denial of PTA based upon any answers to Exhibit 1, questions 18, 19, as well as Appendix A (included in Exhibit 1), questions 1, 2, 3, 4, 5, 8, 9, that do not, on their face, state clearly and unequivocally that the applicant has been determined to currently be dangerous to the extent that he cannot possess an arm;

D- Requiring a so-called "medical clearance" of a PTA applicant, including Plaintiff, when there is no basis and no documentation and no finding that Applicant is disqualified and requires a medical clearance;

E- Requiring a so-called "medical clearance" of a PTA applicant, including Plaintiff, when an applicant answered "YES" to Exhibit 1 question 18;

F- Requiring a so-called "medical clearance" of a PTA applicant, including Plaintiff, when an applicant's answers to Exhibit 1 questions 18, 19, and Appendix A of Exhibit 1, questions 1, 2, 3, 4, 5, 8, and or 9 do not, on their face, state clearly and unequivocally, that the applicant, including here Plaintiff, has not been medically determined to be currently dangerous to the extent that the applicant cannot possess an arm;

G- Any combination of subparagraphs A-F above;

7. In anticipation of bad-faith efforts to obstruct its ruling in recalcitrant jurisdictions, the *Bruen* Court expressly invited challenges such as this one, noting that, "**because any permitting scheme can be put toward abusive**

**ends, we do not rule out constitutional challenges to shall-issue regimes where,** for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Id*. (emphasis added).  The policies that Plaintiff challenges have gone far beyond "abus[ing]"constitutional rights. Defendant has flat-out denied Plaintiff his right to be armed by establishing an onerous permitting regime replete with subjective and discretionary decisions, poll tax-like fees, and as applicable to this lawsuit, discretionary decisions that rely on unconstitutional reasons to deny applicants their PTA permits and designed to flout the Supreme Court's precedents;

8) County has not gotten the United States Supreme Court's message from *Bruen*.  Prior to *Bruen*, County had treated, for more than a century, the Second Amendment as dead, buried and forgotten having severely limited the issuance of any PTA using governmental discretion.  County still uses discretion to determine whether or not a person can own previously acquired arms or whether or not an applicant can acquire new arms with governmental permission based on governmental discretion.  County exercises discretion, as a matter of policy, rule, law, custom and or practice, to deny a PTA, including circumstances when information known to County

does not clearly and unequivocally prove that Plaintiff, and other similarly situated PTA applicants, have been medically proven to be a danger to himself or others as required under state law.  Notwithstanding the United States Constitution and the Second Amendment and the *Bruen* decision, County just simply does not want anyone to be able to acquire, own, possess or carry a firearm anywhere within the state, - which is their fundamental, ancient, constitutionally protected and guaranteed right.

9. For purposes of all Counts and Claims the Defendant has acted under "color of state law" within the meaning of Section 1983.

## <u>IV</u>

## <u>STATEMENT OF LAW</u>

## <u>A</u>

## SECOND AMENDMENT

10.  The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.";

11. The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008);

*McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. 1027 (2016);

12.  Firearms are protected by the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570 (2008);

13.  The Second Amendment is applicable to the States as incorporated through the Due Process Clause of Fourteenth Amendment because the right to "keep and bear Arms" is a fundamental constitutional right essential to ordered liberty. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008).  The Fourteenth Amendment to the United States Constitution provides in pertinent part: No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws;

14. "[T]he Second Amendment guarantees a general right to public carry," meaning ordinary, law-abiding citizens may "'bear' arms in public for self-defense." *Bruen*, 142 S.Ct. at 2135;

15.  *Heller* established a "text, history, and tradition" framework for analyzing Second Amendment questions. *See Bruen*, 142 S. Ct. at 2127-29, citing *Heller*, 554 U.S. at 634. Under that framework, the *Heller* Court assessed historical evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791. Based on that assessment, the Court concluded that the District of Columbia statute which prohibited possession of the most common type of firearm in the nation (the handgun) lacked a Revolutionary-era tradition, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment;

16.  In *Bruen*, the Supreme Court held unconstitutional New York's "good cause" licensing requirement because a State may not condition the right to publicly carry handguns on a citizen's "special need for self-defense." *Bruen*, 142 S.Ct. at 2135 n.8;

17.  The "general right to public carry" cannot be restricted absent "*exceptional* circumstances." *Bruen*, 142 S. Ct. at 2156 (emphasis added). This is because the Second Amendment "presumptively protects" carrying firearms. *Id.* At 2129. To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain

text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S.Ct. at 2129;

18.  It is the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 142 S.Ct. at 2127; *see also id.* At 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the State fails to meet its burden, then the State's restrictions must be enjoined;

19.  The *Bruen* Court struck down as unconstitutional New York's "proper cause" requirement for issuance of a permit to carry a handgun in public. In doing so, *Bruen* explicitly rejected New York's attempt to justify its restriction as analogous to a historical "sensitive place" regulation. 142 S.Ct. at 2133-34. The Court explained that a state may not simply ban guns wherever people may "congregate" or assemble. A rule that "expand[ed] the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly." 142 S.Ct. at 2134. As the Court explained, "[p]ut simply, there is no historical basis for New York to effectively declare the

island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Id;*

20.  It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution. *Frost & Frost Trucking Co. v. Railroad Comm'n of California*, 271 U.S. 583, 593-94 (1926).  "Constitutional rights would be of little value if they could be . . . indirectly denied" (*Smith v. Allwright*, 321 U.S. 649, 664 (1944)), or "manipulated out of existence." *Gomillion v. Lightfoot*, 364 U.S. 339, 345 (1960). "Significantly, the Twenty- Fourth Amendment does not merely insure that the franchise shall not be 'denied' by reason of failure to pay the poll tax; it expressly guarantees that the right to vote shall not be 'denied or abridged' for that reason." *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) (citation omitted). Thus, like the Fifteenth Amendment, the Twenty-Fourth "nullifies sophisticated as well as simple-minded modes" of impairing the right guaranteed. *Lane v. Wilson*, 307 U.S. 268, 275 (1939). " 'It hits onerous procedural requirements which effectively handicap exercise of the franchise by those claiming the constitutional immunity.' " *Harman*, 380 U.S. at 540-41 (citations omitted), quoting *Lane*, at 275;

21.  *Bruen* further establishes several requirements to determine whether a historical regulation is sufficiently analogous. First, the relevant time period

for the historical analogue must be the Founding, centering on 1791. *Bruen*, 142 S.Ct. at 2135-36. That is because "'[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them.'"  *Bruen*, 142 S.Ct. at 2136, quoting *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008).   "20th century and late 19th century statutes and regulations "cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 142 S.Ct. at 2154 & n.28;

22.  Thus, restrictions on the right to keep and bear arms dating after the Civil War and after the adoption of the Fourteenth Amendment in 1868 may be confirmatory of earlier legislation but cannot be used alone to provide the appropriate historical analogue required by *Bruen*.  Legislation, history and events following the Civil war can confirm but cannot limit, reduce or infringe upon the rights as understood in 1791.  In other words, only those restrictions with roots at the time of the Founding are sufficiently "enduring" and "well-established" to comport with the Second Amendment's "unqualified command." *Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961));

23.  Second, the historical analogue must be "representative." Historical "outlier" requirements of a few jurisdictions or of the Territories are to be

disregarded.  *Bruen*, 142 S.Ct. at 2133, 2153, 2147 n.22 & 2156.  Courts should not "uphold every modern law that remotely resembles a historical analogue," because doing so "risk[s] endorsing outliers that our ancestors would never have accepted." *Drummond v. Robinson,* 9 f.4[th] 217 (3rd. Cir 2021),- individual self-defense is the central component of the Second Amendment right;

24.  Third, the historical analogue must be "relevantly similar," which is to say that it must burden ordinary, law-abiding citizens right to carry in a similar manner and for similar reasons. *Bruen*, 142 S. Ct. at 2132.  *Bruen* thus held that the inquiry into whether a proper analogue exists is controlled by two "metrics" of "how and why" any restriction was historically imposed during the Founding era.  *Id.* at 2133. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are "'*central*'" considerations when engaging in an analogical inquiry." *Id.* (emphasis in original). "[T]o the extent later history contradicts what the text says, the text controls." *Id.* at 2137. "Thus, 'postratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text.'" *Id*., quoting *Heller v. District*

*of Columbia*, 670 F.3d , 670 F.3d 1224, 1274, n.6 (Kavanaugh, J.,

dissenting);

25.  Fourth, the historical analysis required by the Supreme Court is

fundamentally a legal inquiry that examines legal history, which is

appropriately presented in briefs. *See Bruen*, 142 S. Ct. at 2130 n.6 (noting

that the historical inquiry presents "legal questions" that judges can address)

(emphasis in original); *see* also id. at 2135 n.8 (rejecting the dissent's

suggestion that further fact-finding was needed and holding that its ruling

did not "depend on any of the factual issues raised by the dissent").

Accordingly, the required analysis does not require fact-finding by a court;

26.  The text of the Second Amendment, as authoritatively interpreted by the

Supreme Court, indisputably covers possession (keep) and the wear, carry,

and transport (bear) of firearms, including handguns by ordinary, law-

abiding citizens.  The Government bears the burden to demonstrate that

there is an enduring, well-established, representative historical analogue to

the restriction imposed by the government. And the historical analogue must

be "relevantly similar" to the contemporary restriction imposed by the

government, burdening the Second Amendment right in a similar manner

and for similar reasons. Under this test established in *Bruen*, County cannot

meet its burden to justify its denial in the issuance of PTA permits under the

circumstances outlined in this complaint.  There is no historical analogue of <u>any</u> delay in the issuance of PTA[1];

## STATEMENT OF LAW

## B

### Fourteenth Amendment

27. The Due Process clause states that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law". *See* U.S. Const. amend. XIV, § 2;

28. To demonstrate a claim for procedural due process a litigant must fulfill the test laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This test requires that we balance: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; (3)

---

[1] There is also no historical analogue allowing the government to infringe on being able to own, acquire or carry arms through a licensure or permitting process at all or with any delay.  It may be that certain specific persons are disallowed from possession or carriage of an arm, but that is vastly different than seeking permission to exercise a right at the present and in the future and to be forced to endure an invasive, onerous, expensive, subjective, discretionary, time-consuming process.  In Hawaii, to top it all off, the issuance of PTA is, at its base, subject to HPD discretion that allows the denial of a PTA based upon unconstitutional bases.

the government's interest, including the possible burdens of alternative procedures." I*d.*

29. Plaintiff has a valid liberty interest in his constitutional right to acquire, own and possess a weapon pursuant to *Bruen*[2];

30. Plaintiff has a fundamental constitutional interest in his acquiring, owning and possessing of his firearms;

31. The County's policies have a great risk of erroneous deprivation because County relies on unreliable information to form a determination of *current* unsuitability such as an affirmative answer to question #18 on the statewide application. And County does not alert Plaintiff that he would need to present additional evidence *beforehand*[3] to demonstrate he is suitable to acquire or possess a firearm;

---

[2] *Bruen* made clear that a state can choose to have minimal, objective requirements in order to carry in a particular mode, "shall issue", whether unconcealed or concealed, but cannot make one mode onerous and difficult to exercise and the other mode effectively denied.  County effectively denies all modes of carry when county merely denies Plaintiff his right to acquire, own and or possess an arm.
[3] County also puts Plaintiff and other similarly situated PTA applicants in an impossible position.  There is no information or documentation to prove that Plaintiff has been medically determined to be dangerous to the extent that he cannot possess an arm, yet County requires a "medical clearance".  This means that Plaintiff, and other applicants, must find a doctor who is willing to write a letter that states that although there is no information or documentation to believe that Plaintiff has been medically determined to be currently so dangerous that he cannot possess an arm, the writing official believes that he no longer suffers from a condition that does not then exist.  This also assumes that there is a medical professional available and willing to write such a letter.

32. The procedures used by County are woefully inadequate in light of the fact a constitutional right is at stake. County labeled Plaintiff unsuitable to exercise a constitutional right without an opportunity to appear and present evidence or any of the other hallmarks required "when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (holding that termination of parental rights must be supported by clear and convincing evidence rather than a "fair preponderance") (quoting *Addington v. Texas*, 441 U.S. 418, 424 (1979));

33. Moreover, the government has no interest in not providing an adversarial hearing or using alternative criteria for evaluating suitability. "Requiring the Government to postpone seizure until after an adversary hearing creates no significant administrative burden." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 59 (1993). "From an administrative standpoint it makes little difference whether that hearing is held before or after the seizure." *Id.* Moreover, HPD could limit itself to relying on judicially ruled disqualifications if it wished to minimize the need for a hearing. As it stands, any harm to HPD "is minimal in comparison to the injury occasioned by erroneous seizure." *Id.*

34. Thus, County has violated Plaintiff's Due Process rights;

35. Plaintiff alleges that the denial of a PTA based upon unconstitutional bases, as described herein, is unconstitutional and thus is a violation of due process as well as the Second and Fourteenth Amendment rights of Plaintiff;

## STATEMENT OF LAW

## C

### H.R.S. §134  Firearms

36. Hawaii law, specifically Hawaii Revised Statutes Section 134 *et seq*, is a comprehensive set of laws covering all aspects of firearms in Hawaii including everything from acquisition, possession, ownership, usage and carriage of arms[4];

37.  Following *Bruen*, the state of Hawaii promulgated new laws regarding firearms, making all aspects of the exercise of Second Amendment rights much more difficult, onerous and expensive.  One aspect of the laws passed by the state of Hawaii dealt with CCW and that law took effect on January 1, 2024.  The Plaintiff applied after *Bruen* and after January 1, 2024;

---

[4] Hawaii state laws regarding all aspects of the Second Amendment and firearms are thorough, oppressive, and comprehensive.  Yet, Hawaii does not have an explicit preemption law that limits regulation to the state and in several circumstances allows or mandates that counties promulgate additional regulations, restrictions and processes.

38.  Following *Bruen*, the state of Hawaii promulgated new rules regarding firearms.  Some of these new rules went into effect in June 2023 and others in January 2024.  Those state statutes are available at https://www.capitol.hawaii.gov/hrscurrent/, last accessed on July 25, 2024[5].

## **STATEMENT OF LAW**

## **D**

### **County specific rules regarding PTA**

39.  Following *Bruen*, counties in Hawaii promulgated new rules.  County promulgated rules regarding Concealed Carry Permit (CCW).  There are no specific County Rules re PTA;

40.  Last year the State of Hawaii updated HRS 134-7(c).  It currently reads.

**§134-7 Ownership, possession, or control prohibited, when; penalty.** (a) No person who is a fugitive from justice or prohibited from possessing a firearm or ammunition under title 18 United States Code section 922 or any other provision of federal law shall own, possess, or control any firearm or ammunition.

(c) No person shall own, possess, or control any firearm or ammunition if the person:

---

[5] Thompson applied for his PTA in July 2024 and those statutes apply as do the current 2024 HRS current as of January 2024.

(1) Is or has been under treatment or counseling for addiction to, abuse of, or dependence upon any dangerous, harmful, or detrimental drug, intoxicating compound as defined in section 712-1240, or intoxicating liquor;

(2) Has been acquitted of a crime on the grounds of mental disease, disorder, or defect pursuant to section 704-411 or any similar provision under federal law, or the law of another state, a United States territory, or the District of Columbia;

(3) Is or has been diagnosed with or treated for a medical, behavioral, psychological, emotional, or mental condition or disorder that causes or is likely to cause impairment in judgment, perception, or impulse control to an extent that presents an unreasonable risk to public health, safety, or welfare if the person were in possession or control of a firearm; or

(4) Has been adjudged to:

(A) Meet the criteria for involuntary hospitalization under section 334-60.2; or

(B) Be an "incapacitated person", as defined in section 560:5-102,

unless the person establishes, with appropriate medical documentation, that the person is no longer adversely affected by the criteria or statuses identified in this subsection[6].

## V

---

[6] County's Hawaii Police Department's webpage still references mental ineligibility characteristics that are no longer law more than a full year after the law changed, (HRS §134-7 was amended effective July 1, 2023). *See* https://www.hawaiipolice.com/services/firearm-registration, last accessed August 6, 2024, "Ineligibility" section.  That section also references "Have been diagnosed as having a significant behavioral, emotional, or mental disorder…" which was the heart of *Santucci v. City and Cnty. of Honolulu*, No. 22-CV-00142-DKW-KJM, 2022 WL 17176902, (D. Haw. Nov. 23, 2022), in which the court ruled that Honolulu's application of that statute was contrary to Hawaii state law.

## CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF UNITED STATES CONSTITUTION AMENDMENTS II AND XIV RIGHT TO BEAR ARMS 42 U.S.C. §1983

41.  Plaintiff hereby re-alleges and incorporates by reference the allegations in the forgoing paragraphs as if set forth fully herein;

42.  Plaintiff does not concede that any Hawaii Revised Statute or County code or policy, practice, habit, custom, or rule is constitutional;

43.  Plaintiff alleges that County's denial of PTA applications has violated his Second and Fourteenth Amendment U.S. Constitutional rights;

44.  Following the *Bruen* decision, Hawaii, and County, erected onerous laws, customs, policies and practices that are designed to delay, deprive and infringe upon the exercise of Second Amendment rights for as long as possible;

45.  In *Cooper v. Aaron,* 358 U.S. 1 (1958), the Supreme Court was confronted with similar bureaucratic foot dragging in implementing public school integration. Given the open defiance of the Supreme Court's opinion in *Brown I*[7] and *Brown II*,[8] the Court did not tolerate finger-pointing, simply observing that "delay in any guise in order to deny . . . constitutional rights .

---

[7] *Brown v. Board of Education*, 347 U.S. 483 (1954).
[8] *Brown v. Board of Education,* 349 U.S. 294 (1955).

. . could not be countenanced, and that only a prompt start, diligently and earnestly pursued . . . could constitute good faith compliance." 358 U.S. at 7.

46. There is no Hawaii Revised Statute, County ordinance or County custom, policy, rule, law or practice to issue PTA, the exercise of a fundamental constitutional right protected by the Second Amendment, without police discretion, and thus County has unfettered discretion to deny PTA and or to deny on unconstitutional bases;

47.  County's unfettered discretion and its application of that unfettered discretion violates both the Second Amendment and the Due Process Clause;

48.  Plaintiff does not concede that any discretion in the issuance of a PTA license is permissible.  In fact, to the extent that any sort of PTA is required, it is possible to issue PTA licenses without any discretion or to allow the acquisition of a firearm without a governmental permit.

## **Plaintiff Roy Thompson**

49.  Plaintiff Roy Thompson realleges and incorporates by reference all of the foregoing allegations of this complaint;

50.  Plaintiff Roy Thompson, hereinafter "Thompson", challenges County's custom, policy, rule, or practice of denial of PTA based upon an affirmative answer to question #18 of Exhibit 1;

51.  Plaintiff Thompson challenges County's custom, policy, rule, or practice of denial of PTA based upon an answer to questions 18 and or 19 and answers to Appendix A of Exhibit 1 questions 1, 2, 3, 4, 5, 8 and or 9 that do not clearly and unequivocally state that Plaintiff has been judicially determined to be currently dangerous so that he is disqualified from acquiring, owning or possessing a firearm;

52.  Plaintiff Thompson challenges County's custom, policy, rule, or practice of denial of PTA based upon an affirmative answer to Exhibit 1 question number 18;

53.  Plaintiff Thompson challenges County's custom, policy, rule or practice of denial of PTA based upon the use of discretion;

54.  Plaintiff Thompson challenges County's custom, policy, rule or practice of unfettered and arbitrary discretion in the issuance of his PTA;

55.  Plaintiff Thompson is a U.S. citizen, a male, and a resident of Hawaii County;

56.  Plaintiff Thompson legally owns firearms in Hawaii;

57.  Plaintiff Thompson is not disqualified under Hawaii or federal law from owning, possessing or carrying a firearm, including in a concealed manner;

58.  Plaintiff Thompson has completed all requirements under Hawaii law and County regulation to be issued a PTA;

59.  Plaintiff Thompson is a veteran of the Hawaii National Guard.

60.  He suffers from anxiety as a result of his service.

61.  His anxiety primarily manifests as insomnia.

62.  He is being treated by VA doctor for anxiety.

63.  He has never been diagnosed or treated for a condition which makes him a threat to "public health, safety, or welfare".

64.  Plaintiff Thompson applied for a PTA by submitting all necessary paperwork to County on or about July 16, 2024;

65.  Plaintiff Thompson received a denial letter, dated July 16, 2024, in or about later July 2024, see Exhibit 2;

66.   County informed Thompson that his PTA was denied based upon-

"Your application for a Permit to Acquire a firearm has been denied based on Section 134-7(c)(3) of the Hawaii Revised Statutes which precludes you from possessing any firearms due to *answering "yes" to question number 18 on the State of Hawaii Permit to Acquire Firearms Application."* *See* Exhibit 2.

67.  Question 18 of the State of Hawaii Permit to Acquire application says

"Have you been diagnosed with or treated for a behavioral, psychological, emotional, or mental condition or disorder?   If you answered "yes" to this question, you must complete the supplemental questionnaire in Appendix A. [HRS § 134-7(c)(3)] A "yes" response to this question will NOT automatically result in the denial of your application.  Additional information is required to allow the issuing authority to determine whether you have been diagnosed with or treated for "a medical, behavioral, psychological, emotional, or mental condition or disorder that causes or is likely to cause impairment in judgment, perception, or impulse control to an extent that presents an unreasonable risk to public health, safety, or welfare if the person were in possession or control of a firearm[.]"  [HRS §134-7(c)(3).]" [9]

68.  Question 18 of the form expressly states that answering "yes" on question 18 does not definitively prohibit an applicant.  *See* Exhibit 1.

69.  County also informed Thompson of the Hawaii revised Statute

regarding disqualified persons-

**"§134-7 Ownership or possession prohibited, when; penalty.**
*(c) No person who: (3) Is or has been diagnosed as having a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes; shall own, possess, or control any firearm or ammunition therefor, unless the person has been medically documented to be no longer adversely affected by the addiction, abuse, dependence, mental disease, disorder, or defect."*

And concluded –

"Therefore, a medical clearance is required before you may reapply."

---

[9] https://www.honolulupd.org/wp-content/uploads/2023/07/SOH-Firearms-Application-fillable-07.23-rev-FINAL.pdf .  County of Hawaii does not have the form hosted online which is why Plaintiff is linking to Honolulu's website. However, it is a State of Hawaii form, so County of Hawaii uses the same one as Honolulu.

And also warned-

"Should you elect to not comply with the medical clearance requirements, any person disqualified from ownership, possession or control of firearms and ammunition under Section 134-7 must dispose of all firearms and ammunition within thirty days from the date of disqualification.";  *See* Exhibit 1.

70.  However, state law was changed last year.  Therefore, County of Hawaii is relying on a nonexistent law to deny Plaintiff his firearm rights. The current version of the HRS 134-7, in relevant part, reads, -

(c) No person shall own, possess, or control any firearm or ammunition if the person:

(3) Is or has been diagnosed with or treated for a medical, behavioral, psychological, emotional, or mental condition or disorder that causes or is likely to cause impairment in judgment, perception, or impulse control to an extent that presents an unreasonable risk to public health, safety, or welfare if the person were in possession or control of a firearm; or …

71.  The County letter goes on to state that if Plaintiff does not receive a medical clearance he must relinquish his firearms by August 16, 2024 or face criminal penalties.

72.  Most doctors in Hawaii will not provide a medical clearance for firearms ownership for anyone because of concerns about liability.

73.  That includes most if not all HMO's and the VA.

74.  Plaintiff's personal doctor will not give him a medical clearance solely because he will not give anyone a medical clearance for firearms as a matter of policy.

75. Based upon information and belief, Thompson is not disqualified under federal, state or county law or rule from acquiring, owning, and or possessing or carrying a firearm;

## **VI**

## **CLAIM FOR DECLARATIVE AND INJUNCTIVE RELIEF UNITED STATES CONSTITUTION AMEND XIV PROCEDURAL DUE PROCESS**

76.  Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein;

77.  The Due Process clause states that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law". *See* U.S. Const. amend. XIV, § 2;

78. To demonstrate a claim for procedural due process a litigant must fulfill the test laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This test requires that we balance: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; (3) the government's interest, including the possible burdens of alternative procedures." I*d.*

79. Plaintiff has a valid liberty interest in his constitutional right to acquire, own and possess a weapon pursuant to *Bruen*;

80. Plaintiff has a valid liberty interest in not being labeled mentally ill to the extent that he is risk to others. *Addington v. Texas*, 441 U.S. 418, 425–26 (1979); *See also Vitek v. Jones*, 445 U.S. 480, 492 (1980) (reaffirming holding).

81. Plaintiff has a valid property interest in maintaining possession and ownership of the firearms he already owns.

82. Plaintiff has a fundamental constitutional interest in the acquisition, ownership and possession of his firearms;

83. The County's policies have a great risk of erroneous deprivation because County relies on unreliable information to form a determination of *current* unsuitability such as answers on the application that do not clearly and unequivocally state that Plaintiff is disqualified from the acquisition, ownership and possession or arms; And County does not alert Plaintiff that he needs to present evidence *beforehand* to demonstrate he is suitable to acquire, own or possess a firearm;

84. The procedures used by County are woefully inadequate in light of the fact a constitutional right is at stake. County labeled Plaintiff unsuitable to exercise a constitutional right without an opportunity to appear and present evidence

or any of the other hallmarks required "when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (holding that termination of parental rights must be supported by clear and convincing evidence rather than a "fair preponderance") (quoting *Addington v. Texas*, 441 U.S. 418, 424 (1979));

85. Moreover, the government has no interest in not providing a hearing or using alternative criteria for evaluating suitability. "Requiring the Government to postpone seizure until after an adversary hearing creates no significant administrative burden." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 59 (1993). "From an administrative standpoint it makes little difference whether that hearing is held before or after the seizure." *Id.* Moreover, HPD could limit itself to relying on judicial determinations of unsuitability and dangerousness if it wished to minimize the need for a hearing. As it stands, any harm to HPD "is minimal in comparison to the injury occasioned by erroneous seizure." *Id.*

## VII

## CLAIM FOR DECLARATIVE AND INJUNCTIVE RELIEF UNITED STATES CONSTITUTION AMEND. XIV SUBSTANTIVE DUE PROCESS

86.    Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein;

87.    When a Defendant, such as County, acts arbitrarily and/or unreasonably it violates substantive due process;

88.  County's policy is ultra vires because it relies upon state law for authority to deny Plaintiff his permit to acquire and possession of his firearms yet County's policy is contradicted by what state law requires.

89.  Plaintiff has a valid liberty interest in not being labeled mentally ill to the extent that he is risk to others.  *Addington v. Texas*, 441 U.S. 418, 425–26 (1979); See also *Vitek v. Jones*, 445 U.S. 480, 492 (1980) (reaffirming holding).

90. Plaintiff has a valid property interest in maintaining possession and ownership of the firearms he already owns.

91. Plaintiff has a liberty interest and a fundamental right interest in exercising his Second Amendment rights to keep and bear arms, including in a possessing firearms in his home and property for lawful self-defense;

92. For purposes of all Counts and Claims the Defendant has acted under "color of state law" within the meaning of Section 1983.

93.    County, by denying the exercise Plaintiff his right to own firearms in a manner in a way that contradicts what state law requires i.e. in a ultra vires manner , has acted arbitrarily and unreasonably;

94.    When government, such as County, has acted in an arbitrary, unreasonable manner and by denying PTA through the use of discretion and or based on unconstitutional bases and denying the exercise of a fundamental constitutional right, it has violated Plaintiff's substantive due process rights. "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana,* 504 U.S. 71, 78 (1992).   County's conduct is arbitrary because the discretion it gives officials to determine suitability is inherently arbitrary;

95.  For purposes of all Counts and Claims the Defendant has acted under "color of state law" within the meaning of Section 1983.

96.  Plaintiff has a right to substantive due process which means that his permit to acquire application cannot be denied in an arbitrary or unreasonable manner, nor can the firearms he currently owns be seized in an arbitrary or unreasonable manner;

97.  For the reasons laid out above, HPD's[10] rules, customs, policy, and or

practices violate Plaintiff's Due Process rights.

## VIII

## (DECLARATORY JUDGMENT)

98.     Plaintiff repeats and realleges the allegations of the preceding

paragraphs as if set forth herein;

99.     The Declaratory Judgment Act provides: "In a case of actual

controversy within its jurisdiction, any court of the United States may

declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be

sought." 28 U.S.C. 2201(a);

100.    Absent a declaratory judgment, there is a substantial likelihood that

Plaintiff will suffer irreparable injury in the future;

101.    There is an actual controversy between the parties of sufficient

immediacy and reality to warrant issuance of a declaratory judgment;

102.    This Court possesses an independent basis for jurisdiction over the

parties;

103.    Plaintiff seeks a judgment declaring that Defendant's customs,

policies, rules and or practices, to wit, denial of PTA based on

---

[10] County's Hawaii Police Department's rules, customs, policies, and or practices.

discretion and or unconstitutional bases as described herein, which deny Plaintiff his Second Amendment rights to keep arms in case of confrontation, are unconstitutional under the Second Amendment;

104. Alternatively, a declaration that County's customs, policies, rules and or practices are unconstitutional as applied to Plaintiff;

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment be entered in his favor and against Defendant as follows:

1. An order preliminarily and permanently enjoining Defendant, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Defendant's policies, rules, customs, or practices complained about above;

2. An order preliminarily and permanently enjoining Defendant, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from denying permits to acquire and otherwise denying the ownership of firearms through the use of discretion when they do not have evidence that someone is an unreasonable danger to himself or others as defined by State law;

3. Declaratory relief that the complained of County customs, policies, rules and or practices are unconstitutional;

4. An order compelling County to grant Plaintiff's PTA application immediately without any further action by Plaintiff;

5. An order compelling County to not seize Plaintiff's firearms, arrest him for possession of his firearms or take any other punitive actions based upon the incident complained about above;

6. Awarding Plaintiff's attorney fees and costs pursuant to 42 U.S.C. §1988;

7. Nominal Damages;

8. Compensatory Damages;

9. Such other relief consistent with the injunction as appropriate; and

10. Such other further relief as the Court deems just and appropriate.

Dated: August 7, 2024.

Respectfully submitted,


/s/ *Kevin O'Grady*

Kevin Gerard O'Grady

Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367

Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com


/s/ *Alan Beck*

Alan Alexander Beck

Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com
Counsel for Plaintiffs

## VERIFICATION

I, Roy Thompson, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.

2. I have personal knowledge of myself, my activities, and my intentions , including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on August 7, 2024

ROY THOMPSON

35